UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

----oo0oo----

| | |
|---|---|
| PECK ORMSBY CONSTRUCTION COMPANY, a Utah corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF RIGBY, an Idaho municipal corporation; PARKSON CORPORATION, a Delaware corporation; and WESTERN SURETY COMPANY, a South Dakota corporation,<br><br>    Defendants.<br>_____/<br>AND RELATED COUNTERCLAIMS AND CROSS-CLAIMS.<br>_____/ | NO. CIV. 1:10-545 WBS<br><br><u>AMENDED MEMORANDUM AND ORDER RE: MOTIONS TO DISMISS AND TO COMPEL ARBITRATION</u> |

----oo0oo----

Plaintiff Peck Ormsby Construction Company ("Peck Ormsby") brought this action against defendants City of Rigby ("Rigby"), Parkson Corporation ("Parkson"), and Western Surety Company ("Western") arising from a construction project in Rigby for which Peck Ormsby is the general contractor and Parkson is a

subcontractor.  After the court granted Parkson's and Western's motions to dismiss with leave to amend, Peck Ormsby filed an amended complaint and then a Second Amended Complaint ("SAC"), alleging a claim for breach of contract against Rigby and a bond claim against Western.  (Docket Nos. 44, 54, 64.)  Rigby brought a counterclaim for breach of contract against Peck Ormsby and cross-claims against Parkson for breach of contract and indemnification and a bond claim against Western.  (Docket No. 55.)  Currently before the court are Parkson's and Western's motions to dismiss the claims against them and Parkson's motion to compel arbitration of Rigby's breach of contract claim.

I.   Factual and Procedural Background

        In January of 2008, Rigby and Peck Ormsby entered into an agreement (the "Prime Contract") whereby Peck Ormsby agreed to construct a wastewater treatment plant in Rigby.  (SAC ¶¶ 7, 11.)  One of the components of the plant, a cloth filtration system, would be made by a subcontractor, who was required under the Prime Contract to provide a written guarantee to Rigby that the filtration system would meet particular specifications.  (Rigby's Am. Answer, Crosscl. & Countercl. ¶ 15 (Docket No. 55).)

        On April 29, 2008, Peck Ormsby and Parkson entered into an agreement (the "Purchase Order") whereby Parkson would supply the filtration system.  (SAC ¶ 9, 13.)  Parkson alleges that the language in the Purchase Order was modified by an agreement (the "Letter Agreement") signed by Parkson and Peck Ormsby earlier on April 29, 2008, declaring that "Parkson is not in privity of contract with the Owner [Rigby]."  (Rothenberg Decl. Ex. A at 2.)  Parkson provided Rigby a "Performance Guarantee" for its

1 equipment "as required by the technical specifications [of the
2 Prime Contract's technical specifications]" in July of 2008.
3 (Mot. for Recons. at 7.)

4 On August 15, 2008, Keller Associates ("Keller"), the
5 engineer for the project, reviewed and approved Parkson's
6 submittals for the filtration system. (SAC ¶ 14.) The
7 filtration system was installed and operational by August 18,
8 2009. (Id. ¶ 15.)

9 On September 9, 2009, Peck Ormsby received a letter
10 from Keller stating that the filtration system did not meet the
11 specified performance criteria. (Id. ¶ 16.) Peck Ormsby sent
12 the letter to Parkson. (Id. ¶ 17.)

13 On April 16, 2010, pursuant to a Change Order to the
14 Prime Contract extending the time of final completion for the
15 project, Parkson as principal and Western as surety executed a
16 Maintenance Bond to guarantee the filtration system against
17 defects in material or workmanship, naming Peck Ormsby and Rigby
18 as dual obligees. (Id. ¶¶ 19-20.)

19 On July 20, 2010, Peck Ormsby received a "rejection
20 letter" from Rigby and Keller formally rejecting the filtration
21 system "based on five (5) reasons indicating that the Equipment
22 is defective." (Id. ¶ 21.) Parkson acknowledged receipt of the
23 letter, but has not repaired the alleged defects. (Id. ¶¶ 22-
24 23.)[1]

---

[1] The parties have requested that the court consider certain documents in deciding the motions to dismiss. As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555

II. Discussion

    A.   Motions to Dismiss

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are 'merely consistent with' a

---

n.19 (9th Cir. 1989). However, the court may consider documents on which the complaint necessarily relies if their authenticity is not disputed. See Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). On that ground and because the parties have so agreed, the court will consider documents related to the Peck Ormsby-Parkson agreement (Purchase Order Acknowledgment; Parkson's Quotation, including Standard Conditions of Sale, Quotation Addendum, and General Arrangement Drawing; and Addenda to Purchase Order cover letter and Supplier Purchase Order), and Western's Maintenance Bond. (Rothenberg Decl. Exs. A-C (Docket No. 13); Micheli Decl. Ex. A (Docket No. 16).)

In deciding the motion to compel arbitration, the court "may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." Macias v. Excel Bldg. Servs. LLC, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (quoting Ostroff v. Alterra Healthcare Corp., 433 F. Supp. 2d 538, 540 (E.D. Pa. 2006)). The parties request that the court consider the documents comprising the Prime Contract between Rigby and Peck Ormsby, the Purchase Order between Peck Ormsby and Parkson, and the Performance Guarantee. (Mastin Decl. Ex. A (Docket No. 60); Ritchie Aff. Exs. A-F (Docket No. 72).) Accordingly, the court will consider these documents in deciding the motion to compel arbitration.

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 556-57).

       1.    <u>Western's Motions to Dismiss Rigby's Maintenance Bond Cross-Claim and Peck Ormsby's Bond Claim</u>

The bond pursuant to which Peck Ormsby and Rigby bring their claims against Western states that Parkson "is required to guarantee the work installed under [the Purchase Order] against defects in materials or workmanship, which may develop during the period of one year ending April 20, 2010." (Mitcheli Decl. Ex. A (Docket No. 16-3).)  Peck Ormsby and Rigby sue Western for recovery pursuant to the bond on the ground that Parkson failed to repair the filtration system after being informed in the September 9, 2009, letter and the July 20, 2010, rejection letter that the filtration system did not meet the performance standards.

Both Peck Ormsby and Rigby fail to plead liability with the requisite specificity.  There is no indication that either of the letters sent to Parkson informed it of "defects in materials or workmanship"; indeed, it appears from the allegations that the filtration system had no actual defects but simply failed to meet the performance standards set out in the Purchase Order and Prime Contract.[2]  Western's maintenance bond does not incorporate those performance standards.  Even if the term "defect" could be construed to apply to performance issues, the parties have not

---

[2] The court notes that it is unlikely Western would have acted as surety to a bond in April of 2010 if Parkson had already been informed of a defect in September of 2009.

5

provided any allegations regarding the type of defect that occurred. The bond claims simply do not cross the line from possibility to plausibility of entitlement to relief.

Because Western cannot be held liable unless Parkson failed to meet its obligations under the bond, see Asociacion de Azucareros de Guatemala v. U.S. Nat'l Bank of Or., 423 F.2d 638, 641 (9th Cir. 1970), the court will dismiss Peck Ormsby's and Rigby's bond claims against Western. Peck Ormsby and Rigby have previously been given leave to amend in order to plead these claims with the requisite specificity, but have failed to do so; accordingly, the court will not give leave to amend a second time.

### 2. Parkson's Motion to Dismiss Rigby's Indemnification Claim

Rigby seeks indemnification from Parkson for any damages Peck Orsmby recovers on its breach of contract claim against Rigby. To state a claim for indemnification, a plaintiff must allege (1) an indemnity relationship, (2) actual liability of the indemnitee to a third party, and (3) a reasonable settlement amount. Chenery v. Agri-Lines Corp., 115 Idaho 281, 284 (1988). Even if Rigby has properly alleged an indemnity relationship, it has not alleged that it has been found liable to Peck Ormsby or that a settlement has been reached. Until that time, Rigby cannot bring a claim for indemnification against Parkson.

Rigby argues that it is required to assert the claim now, even though it admits no settlement has taken place. However, Rigby's claim against Parkson is permissive, not

compulsory.  See Fed. R. Civ. P. 13(a), (g); Peterson v. Watt, 666 F.2d 361, 363 (9th Cir. 1982).  Because Rigby may bring a claim for indemnity against Parkson if and when judgment is entered against Rigby, the court will dismiss this claim.

     B.    <u>Parkson's Motion to Compel Arbitration of Rigby's Breach of Contract Claim</u>

         The Prime Contract between Rigby and Peck Ormsby provides that the subcontractor installing the filtration system would be required to "provide a written guarantee that the installed filter system will produce an effluent that meets the suspended solids requirements of this specification, based on the specified wastewater quality entering the filtration process." (Ritchie Aff. ¶ 5, Ex. D (Docket No. 70-5).)  The Purchase Order between Peck Ormsby and Parkson states that Parkson agrees "to execute to [Peck Ormsby] and/or [Rigby], a guarantee in writing for [Parkson's] work."  (Id. Ex. E.)  However, the Letter Agreement executed prior to the Purchase Order states that:

> Parkson agrees to be bound to the Contract in accordance with the technical and general portions of the documents that form a part of the Prime Contract only to the extent they are applicable to the supply and delivery of the material, equipment and workmanship under the Contract and in accordance with the terms and conditions of the Seller's Quotation and the Drawings and Specifications as amended during the Submittal process.  Parkson is not in privity of contact with the Owner.  Therefore, no terms and conditions between you and the Owner govern Parkson.

(Rothenberg Decl. Ex. A at 2.)

         Parkson provided the Performance Guarantee to Rigby "as required by the technical specifications [of the Prime Contract's technical specifications]," (Mot. for Recons. at 7), in July of 2008, stating that Parkson would provide a filtration system that

7

1  would meet express performance and design specification standards
2  for effluent.  (Ritchie Aff. ¶ 7, Ex. F.)  The Performance
3  Guarantee also contains an arbitration clause and Florida choice
4  of law provision.  (Id.)  Rigby now sues Parkson under the
5  Performance Guarantee provided by Parkson for breach of contract,
6  and Parkson moves to compel arbitration of the claim.

7           The Federal Arbitration Act ("FAA") provides that a
8  party may seek an order to compel arbitration from a district
9  court where another party fails, neglects, or refuses to
10 arbitrate.  9 U.S.C. § 4.  The Act "leaves no place for the
11 exercise of discretion by a district court, but instead mandates
12 that district courts shall direct the parties to proceed to
13 arbitration on issues as to which an arbitration agreement has
14 been signed."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213,
15 218 (1985).  "The court's role under the Act is therefore limited
16 to determining (1) whether a valid agreement to arbitrate exists
17 and, if it does, (2) whether the agreement encompasses the
18 dispute at issue."  Chiron Corp. v. Ortho Diagnostic Sys., Inc.,
19 207 F.3d 1126, 1130 (9th Cir. 2000).  Upon a showing that a party
20 has failed to comply with a valid arbitration agreement, the
21 district court must issue an order compelling arbitration.  Cohen
22 v. Wedbush, Noble, Cooke, Inc., 841 F.2d 282, 285 (9th Cir.
23 1988), overruled on other grounds by Ticknor v. Choice Hotels
24 Int'l, Inc., 265 F.3d 931 (9th Cir. 2001).

25          Although the FAA sets forth a policy favoring
26 arbitration, "a party cannot be required to submit to arbitration
27 in any dispute which he has not agreed so to submit."  United
28 Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S.

1  574, 582 (1960); see also Three Valleys Mun. Water Dist. v. E.F.
2  Hutton & Co., 925 F.2d 1136, 1139 (9th Cir. 1991).  Thus, whether
3  a party has submitted to arbitration is first and foremost a
4  matter of contractual interpretation that must hinge on the
5  intent of the parties.  United Steelworkers, 363 U.S. at 582;
6  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473
7  U.S. 614, 626 (1985).

8       Rigby does not dispute Peck Ormsby's contention that
9  the arbitration clause, if valid, encompasses the breach of
10 contract claim; Rigby only argues that the arbitration clause in
11 the Performance Guarantee did not constitute a valid agreement
12 because Rigby never signed the Performance Guarantee or consented
13 to arbitrate future disputes with Parkson.

14      The commonly accepted meaning of "guarantee" is "[t]he
15 assurance that a contract or legal act will be duly carried out."
16 Black's Law Dictionary 772 (9th ed. 2009).  The term
17 "performance" is defined to mean "[t]he successful completion of
18 a contractual duty."  Id. at 1252.  Thus, "the plain meaning of
19 the term 'performance guarantee' is an assurance or promise that
20 a contractual obligation will be fulfilled."  In re Versant
21 Props, LLC, Civil Nos. 1:10cv98, 1:10cv198, 2011 WL 1131057, at
22 *7 (W.D.N.C. Mar. 25, 2011).

23      Parkson was allegedly required by the Purchase Order to
24 give Rigby a Performance Guarantee.  Parkson argues that it was
25 not bound by the terms of the Purchase Order incorporating the
26 Prime Contract because the Letter Agreement expressly states that
27 "no terms and conditions between you [Peck Ormsby] and the Owner
28 [Rigby] govern Parkson."  (Rothenberg Decl. Ex. A at 2.)

However, the Letter Agreement also states that "Parkson agrees to be bound to the [Purchase Order] in accordance with the technical and general portions of the documents that form a part of the Prime Contract only to the extent that they are applicable to the supply and delivery of the material, equipment and workmanship under the [Purchase Order] . . . ." (Id.) The Prime Contract's technical specifications on the provision of cloth filter equipment requires the subcontractor to provide Rigby with a Performance Guarantee. (Ritchie Aff. Ex. D ¶ 1.04.) This contractual language, combined with Parkson's statement that it provided the Performance Guarantee to Riby "as required by the technical specifications of [the Prime Contract]," (Mot. for Recons. at 7), suggests that the portion of the Prime Contract requiring a Performance Guarantee has been incorporated under the terms of the Letter Agreement. Regardless of whether there was privity of contract between Parkson and Rigby, Parkson was obligated to Peck Ormsby to provide Rigby with a Performance Guarantee. By giving Rigby the Performance Guarantee, Parkson was fulfilling a preexisting obligation.[3]

Under Idaho contract law, a party cannot unilaterally amend an agreement by adding an arbitration clause unless the original contract expressly provided that party with the right to make such a modification. MBNA Am. Bank, N.A. v. Fouche, 146 Idaho 1, 3 (2008). Parkson unilaterally placed an arbitration clause in the Performance Guarantee it was contractually

---

[3] In deciding this motion, the court makes no judgment regarding the merits of the underlying breach of contract claim. See United Computer Sys., Inc. v. AT & T Corp., 298 F.3d 756, 766 (9th Cir. 2002).

obligated to give to Rigby without the right to do so.

At oral arguments on the Motion for Reconsideration, Parkson argued for the first time that there are three exceptions to the pre-existing duty rule.[4] The first articulated exception -- that Parkson had no pre-existing duty to Rigby -- has already been addressed by this court. The second exception that Parkson presents is that the Uniform Commercial Code ("UCC") has abolished the pre-existing duty rule for the sale of goods. See U.C.C. § 2-209; Idaho Code Ann. § 28-2-209(1). It is not clear that UCC § 2-209 applies in this case because it covers "agreement[s] modifying a contract," U.C.C. § 2-209(1), not the unilateral inclusion of a contract provision. In this case, there was neither an agreement nor a pre-existing contract to modify. Rigby never signed the Performance Guarantee, which suggests that the Performance Guarantee should not be considered an "agreement" under UCC § 2-209. Further, as Parkson also denies that it was in privity of contract with Rigby prior to the Performance Guarantee, the Performance Guarantee did not modify a pre-existing contract. Thus, UCC § 2-209's abolition of the pre-existing duty rule does not govern this case.

Even if UCC § 2-209 applied in this case, its application here would be contrary to the FAA's requirement that parties expressly agree to submit to arbitration. See United

---

[4] The court was led to believe that support for these three exceptions was provided in a letter brief presented by Parkson at oral arguments. Based upon this representation, the court granted Rigby permission to file a letter brief in response to Parkson's submission. Upon later review of Parkson's letter brief, the court discovered that it did not in fact present support for the three exceptions.

11

Steelworkers of Am., 363 U.S. at 582.  The court is aware of no authority, nor has Parkson cited cases, supporting the application of UCC § 2-209 to unilaterally imposed arbitration provisions.

Courts have occasionally upheld the unilateral inclusion of arbitration provisions under UCC § 2-207.  See, e.g., Dixie Aluminum Prods. Co. v. Mitsubishi Int'l Corp., 785 F. Supp. 157, 160-61 (N.D. Ga. 1992) (finding inclusion of arbitration clause in confirming document did not materially alter agreement where there was no unfair surprise because the document had been used in prior dealings between the parties). Unlike UCC § 2-209, which applies to the modification of pre-existing contracts, UCC § 2-207 allows for the possibility that additional terms added to a written confirmation between merchants may form part of the original contract.  However, arbitration provisions included in written confirmations are not automatically binding under UCC § 2-207.  See Dorton v. Collins & Aikman Corp., 453 F.2d 1161, 1169 n.8 (6th Cir. 1972) (finding the validity of an arbitration provision in a written confirmation rests upon the particular facts of the case).

Courts interpreting whether UCC § 2-207 permits a unilaterally imposed arbitration provision must first determine whether the arbitration provision materially alters the underlying contract.  U.C.C. § 2-207(2)(b).  Such a determination is influenced by whether the inclusion of the arbitration term presents an unfair surprise based on the parties' prior dealings or industry standards.  See, e.g., Hatzlachh Supply v. Moishe's Elecs., 828 F. Supp. 178, 183-84 (S.D.N.Y. 1993) (holding that

arbitration provision was not a material alteration where the buyer had previously received 42 invoices that all included the arbitration provision); <u>Dixie Aluminum Prods.</u>, 785 F. Supp. at 160-61 (finding arbitration provision had been used in prior dealings between the parties).

The occasional allowance of unilaterally imposed arbitration provisions under UCC § 2-207 does not suggest that such provisions should be upheld under UCC § 2-209's pre-existing duty rule.  Under UCC § 2-207, the court asks whether the arbitration provision unilaterally included in a written confirmation should be considered part of the underlying contract.  Under UCC § 2-209, the elimination of the pre-existing duty rule covers agreements modifying existing, finalized contracts.  A discussion of consideration, which is not necessary for mutual agreements under UCC § 2-209, has no place in the application of UCC § 2-207 to unilaterally included provisions because the contract finalized by the written confirmation constitutes the consideration.  There is no "materially alter" test under UCC § 2-209 as there is under UCC § 2-207 because, presumably, the <u>mutual intention</u> of the parties under UCC § 2-209 is to alter the existing contract.

UCC § 2-207 governs contract provisions added by a party unilaterally, whereas UCC § 2-209 governs provisions that alter a pre-existing contract based on mutual agreement.  Here, Parkson claims that the Performance Guarantee created a mutual, binding agreement between itself and Rigby.  However, there is no mutual intention to arbitrate disputes in this case because Rigby never signed the Performance Guarantee or in any way agreed to

arbitrate disputes with Parkson.

The final exception proposed by Parkson to the pre-existing duty rule is triggered when the promisee undertakes to do something in addition to what he already is obligated to do under his pre-existing duty. Parkson claims that by agreeing to undertake testing and recommend solutions if the equipment it provided were to fail, it made additional promises to Rigby that were not found in the technical specifications of the Prime Contract. This exception does not apply in this case as it governs contract modifications mutually agreed upon by the parties. See, e.g., Care Travel Co., Ltd. v. Pan Am. World Airways, 944 F.2d 983, 991 (applying the exception "if the bargained-for performance rendered by the promisee includes something that is not within the requirements of the pre-existing duty"); Great Plains Equip, Inc. v. Nw. Pipeline Corp., 132 Idaho 754, 769-70 (1999) (applying the exception after finding that the parties implicitly agreed to the contract modification). Allowing such a unilateral contract modification to impose arbitration would permit Parkson to circumvent the FAA requirement that the parties expressly agree to arbitrate their claims.

Parkson provided the Performance Guarantee to Rigby under its pre-existing duty to Peck Ormsby. Rigby never signed the Performance Guarantee nor affirmatively agreed to the arbitration provision contained within it. Because Rigby never agreed to arbitrate disputes with Parkson, the court will deny

Parkson's motion to compel arbitration.[5]

IT IS THEREFORE ORDERED that:

(1) Western's motion to dismiss Peck Ormsby's bond claim be, and the same hereby is, GRANTED;

(2) Western's motion to dismiss Rigby's maintenance bond claim be, and the same hereby is, GRANTED;

(3) Parkson's motion to dismiss Rigby's indemnification claim be, and the same hereby is, GRANTED;

(4) Parkson's motion to compel arbitration of Rigby's breach of contract claim be, and the same hereby is, DENIED; and

(5) The stay of discovery entered by the court on August 22, 2011, is hereby LIFTED.

DATED:  November 7, 2011

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[5] In the event that the court is not persuaded to change its mind, Parkson requests further clarification of the effect of the court's ruling on Parkson and Rigby's contractual relationship.  This determination is outside the scope of the original order.  This Amended Order only addresses the invalidation of the arbitration provision of the Performance Agreement and does not address the validity of any other provision.