UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

----oo0oo----

| | |
|---|---|
| PECK ORMSBY CONSTRUCTION COMPANY, a Utah corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF RIGBY, an Idaho municipal corporation; PARKSON CORPORATION, a Delaware corporation; and WESTERN SURETY COMPANY, a South Dakota corporation,<br><br>　　　　Defendants.<br>_____/<br>AND RELATED COUNTERCLAIMS AND CROSS-CLAIMS.<br>_____/ | NO. CIV. 1:10-545 WBS<br><br>MEMORANDUM AND ORDER RE: MOTION TO STAY PENDING APPEAL AND MOTION TO AMEND PLEADINGS TO JOIN A PARTY |

----oo0oo----

Plaintiff Peck Ormsby Construction Company ("Peck Ormsby") brought this action against defendants City of Rigby ("Rigby"), Parkson Corporation ("Parkson"), and Western Surety Company ("Western") arising from a construction project in Rigby for which Peck Ormsby is the general contractor and Parkson is a subcontractor. Presently before the court is Parkson's motion

1

for a stay of the proceedings pending appeal of the court's November 7, 2011, Order denying Parkson's motion to compel arbitration. (Docket No. 99.) Also before the court is Rigby's motion to amend the pleadings to assert an additional crossclaim against Travelers Casualty and Surety Company of America ("Travelers") for breach of a public works Performance Bond. (Docket No. 111.)

I. Factual and Procedural Background

In January of 2008, Rigby and Peck Ormsby entered into an agreement (the "Prime Contract") whereby Peck Ormsby agreed to construct a wastewater treatment plant in Rigby. (SAC ¶¶ 7, 11.) One of the components of the plant, a cloth filtration system, would be made by a subcontractor, who was required under the Prime Contract to provide a written guarantee to Rigby that the filtration system would meet particular specifications. (Rigby's Am. Answer, Crosscl. & Countercl. ¶ 15 (Docket No. 55).)

On April 29, 2008, Peck Ormsby and Parkson entered into an agreement (the "Purchase Order") whereby Parkson would supply the filtration system. (SAC ¶¶ 9, 13.) Parkson alleges that the language in the Purchase Order was modified by an agreement (the "Letter Agreement") signed by Parkson and Peck Ormsby earlier on April 29, 2008, declaring that "Parkson is not in privity of contract with the Owner [Rigby]." (Rothenberg Decl. Ex. A at 2 (Docket No. 13).) The Letter Agreement further provides that "Parkson agrees to be bound to the Contract in accordance with the technical and general portions of the documents that form a part of the Prime Contract only to the extent they are applicable to the supply and delivery of the material, equipment and

2

workmanship under the Contract . . . ." (Id.)

Parkson provided Rigby a "Performance Guarantee" for its equipment "as required by the technical specifications [of the Prime Contract]" in July of 2008. (Mot. for Recons. at 7 (Docket No. 85).) The Performance Guarantee stated that Parkson would provide a filtration system that would meet express performance and design specification standards for effluent. (Ritchie Aff. ¶ 7, Ex. F (Docket No. 72).) The Performance Guarantee also contained an arbitration clause and Florida choice of law provision. (Id.)

Following a dispute over the performance of the filtration system, Rigby sued Parkson under the Performance Guarantee for breach of contract, and Parkson moved to compel arbitration of the claim. On November 7, 2011, this court denied Parkson's motion to compel arbitration of Rigby's breach of contract claim. (Docket No. 96.) Parkson filed its notice of interlocutory appeal to the United States Court of Appeals for the Ninth Circuit on December 6, 2011. (Docket No. 98.)

II. Motion to Stay Pending Appeal

    A. Legal Standard

When a party files a notice of appeal, "jurisdiction over the matters being appealed normally transfers from the district court to the appeals court." Mayweathers v. Newland, 258 F.3d 930, 935 (9th Cir. 2001). "Absent a stay, . . . an appeal of an interlocutory order does not ordinarily deprive the district court of jurisdiction except with regard to the matters that are the subject of the appeal." Britton v. Co-op Banking Grp., 916 F.2d 1405, 1412 (9th Cir. 1990). The Federal

Arbitration Act ("FAA") provides for immediate appellate review of an interlocutory order denying a motion to compel arbitration and refusal to stay judicial proceedings pending arbitration. 9 U.S.C. § 16(a)(1)(A)-(B).

Some jurisdictions hold that the trial court must stay proceedings while a denial of a motion to compel arbitration is being appealed. See, e.g., Bradford-Scott Data Corp. v. Physician Computer Network, 128 F.3d 504, 505-06 (7th Cir. 1997); Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 215 n.6 (3d Cir. 2007). But see Motorola Credit Corp. v. Uzan, 388 F.3d 39, 53-54 (2d Cir. 2004) (no automatic stay). The Ninth Circuit Court of Appeals has held, however, that a district court has discretion to decide whether to grant a stay, reasoning that a mandatory stay,

> would allow a defendant to stall a trial simply by bringing a frivolous motion to compel arbitration. The system created by the Federal Arbitration Act allows the district court to evaluate the merits of the movant's claim and if, for instance, the court finds that the motion presents a substantial question, to stay the proceedings pending an appeal from its refusal to compel arbitration. See, e.g., Pearce v. E.F. Hutton Group, Inc., 828 F.2d 826, 829 (D.C. Cir. 1987) (district court, after denying appellant's motion to compel arbitration, granted its motion for a stay pending appeal because it found appellant's claim raised issues of first impression and that appellant would suffer substantial harm if the action were not stayed); C.B.S. Employees Federal Credit Union v. Donaldson, 716 F. Supp. 307 (W.D. Tenn. 1989) (developing test to determine whether district court should stay trial proceedings pending appeal from denial of motion to stay proceedings pending arbitration). This is a proper subject for the exercise of discretion by the trial court.

Britton, 916 F.2d at 1412. The two cases cited by the Ninth Circuit in Britton provide guidance as to how a trial court should exercise discretion regarding whether to grant a stay

pending an appeal.

The court in C.B.S. Employees Federal Credit Union v. Donaldson, 716 F. Supp. 307 (W.D. Tenn. 1989), determined that a stay pending appeal of the denial of a motion to compel arbitration falls under Federal Rule of Civil Procedure 62(c). Id. at 309. Rule 62(c) provides that:

> While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

Fed. R. Civ. P. 62(c). Under Rule 62(c), a court must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Golden Gate Rest. Ass'n v. City & Cnty. of S.F., 512 F.3d 1112, 1115 (9th Cir. 2008) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)) (internal quotation marks omitted). This test, known as the Hilton test, is similar to the one governing preliminary injunctions "because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." Nken v. Holder, 556 U.S. 418, ----, 129 S. Ct. 1749, 1761 (2009).

The court must weigh these factors using a continuum or "sliding scale" approach in which a stronger showing of one element may offset a weaker showing of another. Leiva-Perez v. Holder, 640 F.3d 962, 965-66 (9th Cir. 2011). Even though the factors will be balanced by the court, a minimum threshold showing must be made under each factor. Id. at 966. "The party

5

requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Nken, 129 S. Ct. at 1761.

   B.   Success on the Merits

With respect to the merits, some courts have noted that the consideration of this factor "cannot be rigidly applied," Or. Natural Res. Council v. Marsh, Civ. No. 85-6433, 1986 WL 13440, at *1 (D. Or. Apr. 3, 1986), because "the district court would have to conclude that it was probably incorrect in its determination on the merits." Himebaugh v. Smith, 476 F. Supp. 502, 510 (C.D. Cal. 1978). Rather, district courts properly "stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." Id. (citing Washington Metro. Area v. Holiday Tours, 559 F.2d 841, 844 (D.C. Cir. 1977)). An injunction is "frequently issued where the trial court is charting a new and unexplored ground and the court determines that a novel interpretation of the law may succumb to appellate review." Stop H-3 Ass'n v. Volpe, 353 F. Supp. 14, 16 (D. Haw. 1972). The court is persuaded by this reasoning, and thus will not rigidly apply this factor. This does not, however, mean that the court is excused from evaluating the factor entirely.

In order to demonstrate that it is likely to succeed on the merits of its appeal, Parkson must show that it either has a "reasonable probability" of prevailing or that the appeal raises "serious legal questions." Leiva-Perez, 640 F.3d at 966-67. Parkson argues that it will likely prevail on appeal because the

terms of the contract at issue clearly evidence the intent of the parties to arbitrate. As the court discussed in its order denying Parkson's motion to compel arbitration, Parkson was required to provide the Performance Guarantee containing the arbitration provision to Rigby under its pre-existing duty to Peck Ormsby. (Nov. 7, 2011, Order at 9:23-10:19.) Rigby never affirmatively agreed to the arbitration provision and there are no applicable exceptions to the pre-existing duty rule in this case that would permit the inclusion of an additional contract term. (Id. at 10:20-14:21.) On appeal, Parkson must overcome clear legal authority requiring parties to affirmatively agree to arbitration. See United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960) (holding that "a party cannot be required to submit to arbitration in any dispute which he has not agreed so to submit"). Parkson has never adequately refuted this point.

In this case, Parkson's chances of succeeding on the merits of its appeal are entirely speculative. While the Court of Appeals may eventually find Parkson's, and not the court's, analysis more persuasive, the court can only hazard a guess as to the probability that Parkson will succeed. For the purposes of evaluating Parkson's fulfillment of the first Hilton factor, the court is cognizant that it need not rigidly apply the factor, however, the court believes that Parkson has not presented more than a minimal likelihood of success on the merits of its appeal nor has it shown that it presents a serious legal question or matter of first impression on appeal.

  C. <u>Irreparable Harm to Parkson</u>

The court must consider the degree of irreparable harm Parkson may suffer if a stay pending appeal is not granted and Parkson prevails on appeal. W. Land Exch. Project v. Dombeck, 47 F. Supp. 2d 1216, 1218 (D. Or. 1999). For the moving party to be irreparably injured for the purposes of a motion to stay pending appeal, that injury must be "categorically irreparable." Nken, 129 S. Ct. at 1761. A showing of some "possibility of irreparable injury" is insufficient. Id. If Parkson's appeal is successful, any judgment rendered before this court would be vacated and Parkson and Rigby would be required to arbitrate the claim. See Britton, 916 F.2d at 1410.

Parties agree to arbitrate in order to avoid more formal, and frequently far more expensive, proceedings in state or federal court. If parties are required to endure court proceedings before arbitration, the potential savings from arbitration are permanently lost. "[D]enying the parties arbitration deprives them of an inexpensive and expeditious means of resolving the dispute." Int'l Ass'n of Machinists & Aerospace Workers v. Aloha Airlines, 776 F.2d 812, 815 (9th Cir. 1985). There are two primary sources of expenses that Parkson would be required to endure if a stay is denied and it later prevails on appeal -- costs stemming from discovery and trial.

While some courts have held that "[t]he cost of some pretrial litigation does not constitute an irreparable harm," Bradberry v. T-Mobile USA, Inc., No. C 06-6567, 2007 WL 2221076, at *4 (N.D. Cal. Aug. 2, 2007), courts have generally held that the irreparable harm factor under the Hilton test is satisfied when a party is appealing the denial of a motion to compel

arbitration because it will be required to endure potentially unnecessary litigation expenses, see, e.g., Murphy v. DirecTV, Inc., No. 2:07-cv-06465, 2008 WL 8608808, at *2 (C.D. Cal. July 1, 2008); Steiner v. Apple Computer, Inc., No. C 07-04486, 2008 WL 1925197, at *5 (N.D. Cal. Apr. 29, 2008). This does not end the court's inquiry, rather,

> [j]ust because this factor will generally be satisfied in the special context of the denied motion to compel arbitration, does not mean the entire Hilton test will generally be satisfied. All this means is that appellants who make a strong showing they are likely to succeed on the merits, will generally prevail on this second Hilton factor. In contrast, appellants who merely have substantial questions on appeal, will have to show this factor strongly favors them, which will turn on the facts and circumstances of each case.

Steiner, 2008 WL 1925197, at *5. Because the court did not find that Parkson made a strong showing that it is likely to succeed on appeal, the court will weigh how strongly the irreparable harm factor favors Parkson's petition to stay the action.

The arbitration requested in this case would be conducted by the American Arbitration Association ("AAA"), which strictly controls what discovery may occur during arbitration. Parkson thus argues that it would "almost certainly suffer irreparable harm if it is forced to participate in multiple depositions pending appeal because such depositions are not automatically allowed in arbitration under the AAA rules." (Mem. in Supp. of Parkson Corp.'s Mot. for Stay Pending Appeal at 8 (Docket No. 99-1).) Although it is true that, absent a stay, Parkson will be burdened by the costs of pursuing the litigation, this concern is mitigated for two reasons.

First, if the court grants a stay pending appeal and

9

Parkson prevails on appeal, the appeal will only affect the counterclaim between Rigby and Parkson; the litigation between Peck Ormsby and Rigby will continue.[1] Rigby's claim against Peck Ormsby is based on the portion of the Prime Contract that Peck Ormsby subcontracted out to Parkson. Parkson's employees would thus still be required to participate in discovery related to the claim between Rigby and Peck Ormsby because its performance under the contract is fundamental to the dispute and it employs several key witnesses to the alleged breach. Specifically, Parkson's employees will still be subject to subpoena for depositions related to the claims between Peck Ormsby and Rigby and Parkson will still be required to attend and prepare for those depositions. See In re Garlock, 463 F. Supp. 2d 478, 480 (S.D.N.Y. 2006) (holding that plaintiffs were entitled to subpoena discovery from a witness in a legal action against a third party notwithstanding plaintiffs' limited ability to obtain discovery against the witness as a party to a related arbitration). Any cost relating to discovery that Parkson would have to participate in regardless of the outcome of the appeal is not irreparable harm.[2]

---

[1] Rigby has two remaining claims in this action. First, Rigby has a claim against Peck Ormsby for breach of the Prime Contract based on Peck Ormsby's alleged failure to furnish cloth filter equipment that complied with the specifications of the Prime Contract. Second, Rigby has a claim against Parkson for breach of the requirements of the Prime Contract, and in particular the requirement to meet the performance specifications of the guarantee Parkson provided to Rigby. Parkson's motion to stay pending appeal only encompasses Rigby's second claim.

[2] Although Parkson would be entitled to fees and mileage for depositions related to the Peck Ormsby/Rigby claim under Rule 45 if it were treated as a material witness instead of a party,

Second, due to the timing of Parkson's request for a stay, Parkson lacks a strong argument for prejudice. The parties have already spent a significant amount of time and expense litigating this case and have completed written discovery, including approximately 12,000 pages of documents that Parkson produced shortly before the hearing on this motion. The parties represent that the remaining discovery would be in the form of depositions. (Mem. in Supp. of Parkson Corp.'s Mot. for Stay Pending Appeal at 8.) The only remaining discovery costs that could constitute irreparable harm for Parkson are therefore the costs associated with the depositions of Peck Ormsby's and Rigby's witnesses. At oral arguments, the parties estimated that there would likely be no more than two to three depositions taken of each party. The expense of participating in four to six depositions is not particularly large, especially given Parkson's indication that it would likely choose to observe the depositions of Peck Ormsby's and Rigby's employees even if the court grants Parkson's requested stay.[3]

The continuation of the litigation between Peck Ormsby and Rigby, which necessitates Parkson's involvement in discovery regardless of the outcome of Parkson's appeal, suggests that the irreparable harm stemming from the denial of a stay in this case

---

the statutory witness fee rate of $40 per day plus is minimal and pales in comparison to the costs that Parkson would likely expend preparing for and attending the depositions. See 28 U.S.C. § 1821(b).

[3] Had Parkson been serious about avoiding the costs of discovery while it was pursing its motion to compel arbitration against Rigby it could have moved to stay discovery, as it previously did shortly before the court heard its initial motion to compel arbitration against Rigby, (Docket No. 78).

is minimal. Parkson will continue to play a significant role in the discovery for this action regardless of whether it ends up arbitrating the claim against it. Parkson's continued involvement in the suit distinguishes this case from the many relied upon by Parkson to show that the burden of litigation expenses constitutes an irreparable burden because in this case Parkson will face the financial burden of discovery regardless of the outcome of the appeal.

Denial of Parkson's motion to stay at this time does not mean that a stay may not become appropriate as trial approaches. See Li v. A Perfect Franchise, No. 5:10-CV-01189-LHK, 2011 WL 2293221, at *5 (N.D. Cal. June 8, 2011) ("If the case proceeds to the point of final pretrial preparations without a ruling from the Ninth Circuit on Defendants' appeal of the arbitration issue, Defendants may renew their motion to stay the case at that time."); Bradberry, 2007 WL 2221076, at *4 (denying motion to stay action without prejudice and clarifying that a stay may be appropriate prior to trial). Denial of Parkson's motion to stay without prejudice will allow Parkson to re-file its motion before trial to prevent any potentially unnecessary trial expenses. The court accordingly considers only the minimal irreparable harm to Parkson from participation in discovery.

D.  Injury to Other Parties

Parkson states that Peck Ormsby and Rigby will not be harmed by the grant of a stay to Parkson because they "can continue with written discovery and depositions on the claims they have against one another without Parkson's participation." (Mem. in Supp. of Parkson Corp.'s Mot. for Stay Pending Appeal at

9.) As discussed above, the idea that Peck Ormsby and Rigby can continue discovery without Parkson's involvement oversimplifies the case at hand and the harm to Peck Ormsby and Rigby when Parkson re-enters the litigation after losing its appeal is significant.

Parkson would be rejoining the litigation without the benefit of the discovery already conducted by Peck Ormsby and Rigby because it would only be participating as a material witness. Parkson would likely want to engage in discovery for matters on which Peck Ormsby and Rigby have already expended significant costs and labor. The parties will then have to duplicate prior discovery efforts in order to accommodate Parkson's delayed arrival and would likely need to depose the same witnesses for a second deposition. Duplicative discovery efforts are extremely likely because much of the discovery that Peck Ormsby and Rigby will want to conduct "will also necessarily encompass the factual basis of Rigby's claims against Parkson and any defenses that Parkson may have against those claims." (City of Rigby's Mem. in Opp'n to Parkson's Mot. for Stay Pending Appeal at 17 (Docket No. 105).) Peck Ormsby and Rigby would therefore be irreparably harmed if a partial stay is granted and Parkson ultimately does not prevail on its appeal.

The fact that the claim against Parkson is at the core of this case suggests that it would be practically impossible to stay the claim involving Parkson but not the claim between Rigby and Peck Ormsby. Although Parkson did not request a stay of the entire case, the court considers whether such a stay would be appropriate.

Plaintiff Peck Ormsby stated during oral arguments that it opposed a stay of the entire action. The court agrees that Peck Ormsby should not be required to stay its claims while it waits for the outcome of an appeal to which it is not a party. Peck Ormsby should not be required to wait longer than necessary to attempt to recover the almost $400,000 it alleges is being wrongfully withheld from it. Rigby also represented that it opposed a stay of the entire matter because it desires a prompt resolution of this case so that it may complete the construction of its wastewater treatment plant. The court agrees that Rigby should not be required to wait longer than necessary to resolve this case. The harm resulting from a stay of the entire case to both Peck Ormsby and Rigby would be significant.

   E.   Public Interest

The only public interest identified by Parkson in its motion to stay pending appeal is the "liberal federal policy favoring arbitration" in the FAA. (Mem. in Supp. of Parkson Corp.'s Mot. for Stay Pending Appeal at 9.) The question before the court is not whether to compel arbitration, but whether to stay the proceedings pending appeal of an order denying arbitration.

"The public interest inquiry primarily addresses impact on non-parties rather than parties." Sammartano v. First Judicial Dist. Ct., 303 F.3d 959, 974 (9th Cir. 2002). The court seriously doubts that the public has any interest in whether Rigby and Parkson are required to arbitrate this matter. See Tribal Vill. of Akutan v. Hodel, 859 F.2d 662, 663 (9th Cir. 1988) (suggesting that the public interest consideration is only

14

applicable "in certain cases"). This is not a case in which shared natural resources are threatened. See id. Nor does this case involve an alleged infringement of important constitutional rights that will continue to afflict the masses unless the court intervenes. See Sammartano, 303 F.3d at 974 (public interest in upholding First Amendment principles). At most, the public has only a generic interest in seeing that federal law is properly applied -- which is true of any case and thus cannot justify the extraordinary remedy sought by Parkson. See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy . . . ." (quotation mark omitted)); Reading & Bates Petroleum Co. v. Musslewhite, 14 F.3d 271, 275 (5th Cir. 1994) ("Stays pending appeal constitute extraordinary relief . . . ."). Consequently, the public interest does not favor a stay of the court's order regarding arbitration.

F. Conclusion

The balance of the Hilton factors weigh in favor of denying Parkson's motion to stay the action pending appeal. Parkson has failed to show that it will likely prevail upon appeal, that it will suffer more than minimal irreparable harm, that injury to other parties will be minimal, or that public policy considerations weigh in favor of a stay. Accordingly, the court will deny Parkson's motion to stay pending appeal without prejudice.

III. Motion to Amend to Join Party

Rigby moves to add a crossclaim against Travelers for breach of a separate Performance Bond issued by Travelers that

```
 1  guarantees Peck Ormsby's performance of its contract with Rigby.
 2  Neither Peck Ormsby nor Parkson oppose the motion.  Accordingly,
 3  the court will grant Rigby's motion to amend its pleadings to add
 4  a crossclaim against Travelers.
 5          IT IS THEREFORE ORDERED that Parkson's motion to stay
 6  pending appeal be, and the same hereby is, DENIED without
 7  prejudice.
 8          IT IS FURTHER ORDERED that Rigby's motion to amend its
 9  pleadings to join a party be, and the same hereby is, GRANTED.
10          Rigby shall file its amended pleadings within ten days
11  of the date of this Order.
12  DATED:  March 15, 2012
```

_/s/ William B. Shubb_
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE