1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

----oo0oo----

PECK ORMSBY CONSTRUCTION
COMPANY

       Plaintiff,

   v.

CITY OF RIGBY; PARKSON
CORPORATION; and WESTERN
SURETY COMPANY

       Defendants.

Case No. CV 10-545-S-WBS

MEMORANDUM AND ORDER RE:
MOTIONS FOR SUMMARY JUDGMENT

----oo0oo----

Plaintiff Peck Ormsby Construction Company ("POCC")
brought this action against defendants City of Rigby ("Rigby"),
Parkson Corporation ("Parkson"), and Western Surety Company
arising from a construction project in Rigby for which POCC was
the contractor and Parkson the subcontractor.  Rigby subsequently
filed a counter-claim against POCC, a cross-claim against
Parkson, and a third-party claim against Travelers Casualty and
Surety Corporation ("Travelers") as co-guarantors of POCC's

1

Performance Bond.  Currently before the court are motions for summary judgment by POCC, Travelers, and Parkson pursuant to Federal Rule of Civil Procedure 56.

I.    Relevant Facts and Procedural History

        Around December 2007, POCC submitted a bid ("Bid") to construct a wastewater treatment plant in Rigby, Idaho.  (Peck Aff. (Docket No. 123-26) Ex. A.)  The Bid selected Parkson as the manufacturer of the plant's cloth filtration system.  (Id.)  POCC won the bidding process and entered into an agreement ("Prime Contract") with Rigby in January 2008 to construct the plant. (Id. Ex. B ("Prime Contract").)

        Pursuant to the requirement in the Prime Contract, POCC, with Travelers, provided a performance bond to Rigby (Id. Ex. F.)  Parkson, under its contract with POCC, also provided Rigby with a performance bond ("Performance Guarantee") for its equipment.  (Mastin Aff. (Docket 128-3) Ex. C.)

        Keller Associates ("Keller"), engineers for the project, reviewed and approved Parkson's submittals for the filtration system in 2008.  (Meuleman Aff. (Docket 123-3) Ex. A at 62, Ex. B at 40-41, Exs. D-12, D-51, D-52, D-53.)  POCC installed the Parkson filters.  (Id. Ex. B at 41.)

        After installation, in August 2009, the filters failed in the initial startup testing.  (Williams Aff. (Docket 127-2) Ex. C.)  During 2009, Parkson allegedly attempted to modify the filters so that they would function properly and meet specifications.  (Id. Ex. A; Mullen Depo. at 114:19-23.)

        When POCC submitted an invoice in December 2009 to receive payment for the remainder of the project minus a portion

2

1  of the cloth filtration system, Rigby refused to pay the invoiced
2  amount.  (Meuleman Aff. ¶¶ 12-15, Exs. H, I.)  POCC requested a
3  time extension to complete the project.  (Williams Aff. Ex. D.)
4       POCC then requested a second time extension, agreed
5  upon in Change Order 22, which provided POCC until September 2010
6  to "modify the Equipment as required to meet performance
7  specifications."  (Peck Aff. Ex. K.)  Change Order 22
8  incorporates the Plan of Action and the Acceptance Test Plan
9  ("ATP").  The ATP provides for a two-phase testing of the
10 equipment, with the second phase to last for seven days.  (Id.)
11 The ATP also provides that "[i]f any item malfunctions during the
12 test, the item shall be repaired and the test restarted at day
13 zero with no credit given for the operating time before the
14 aforementioned malfunction."  (Id. Ex. D.)
15      Change Order 22 also incorporated the Plan of Action,
16 which provides that "upon successful execution of the ATP, the
17 Plan of Action and approval by the City's Engineer, in effect,
18 [POCC] will have met and satisfied all its contractual
19 requirements in its entirety and thus complete [POCC's]
20 contractual obligation."  (Id.)
21      Testing of the filters began in June 2010.  The filters
22 passed the first stage of testing, but during the second phase a
23 valve malfunctioned, allegedly due to the excessive backwash
24 created by the filters.  (Williams Aff. Exs. A, C; Mullen Depo.
25 at 76:23, 78:8, 80:1, 81:2, 95:7-10.)  A replacement valve was
26 ordered and installed several days after the test.  (Meuleman
27 Aff. Ex. C at 54-55, Ex. D-19.)
28      POCC requested a retest of the filters.  (Peck Aff. Ex.

3

C.)  Rigby, however, sent POCC a letter formally rejecting the
filters for five specified reasons.  (Peck Aff. Ex. O.)  POCC
again requested to re-test the Parkson filters, but its request
was denied.  (Peck Aff. Exs. C, M-N, R.)

POCC filed suit against City of Rigby, Parkson, and
Western Surety for breach of contract.  (Docket No. 1.)  Rigby's
Answer included a crossclaim against Parkson for indemnification
and breach of contract, a crossclaim against Western Surety for
breach of contract, and a counterclaim against POCC for the same.
(Docket No. 19.)  Rigby's claim against Western Surety Company
was subsequently dismissed, as was its indemnification claim
against Parkson.  (Am Mem. & Order Re: Mots. to Dismiss and to
Compel Arbitration ("Order") (Docket No. 96).)  Parkson moved to
compel arbitration, (Docket No. 60), but the motion was denied.
(Id. at 6-9.)

After this court granted the motions to dismiss, POCC
amended its Complaint and Rigby, in its Answer to the First
Amended Complaint, brought a breach of contract claim against
Travelers.  (Docket No. 115.)

POCC, Travelers, and Parkson now bring motions for
summary judgment against Rigby.  (Docket Nos. 123, 125, 128.)  In
addition, POCC moves to strike certain exhibits and facts from
Rigby's opposition.  (Docket No. 133.)

II. Motion to Strike

POCC moved to strike Exhibits D, E, and F from the
Affidavit of Bradley J. Williams under Federal Rule of Civil

4

1  Procedure 56(c)(4) due to lack of personal knowledge.[1]  However,

2  these objections were withdrawn after Rigby submitted the

3  affidavit of James Mullen.[2]  (Docket 138-6.)  Accordingly, POCC's

4  motion to strike will be denied.

5  III. <u>Motions for Summary Judgment</u>

6          Summary judgment is proper "if the movant shows that

7  there is no genuine dispute as to any material fact and the

8  movant is entitled to judgment as a matter of law." Fed. R. Civ.

9  P. 56(a).[3]  A material fact is one that could affect the outcome

10 of the suit, and a genuine issue is one that could permit a

11 reasonable jury to enter a verdict in the non-moving party's

12 favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

13 (1986).  The party moving for summary judgment bears the initial

14 burden of establishing the absence of a genuine issue of material

15 fact and can satisfy this burden by presenting evidence that

16

17

18      [1]   POCC also files objections to facts and expert
testimony in Rigby's opposition brief.  Even if the non-moving
19 party's evidence is presented in a form that is currently
inadmissible, such evidence may be evaluated on a motion for
20 summary judgment so long as the moving party's objections could
be cured at trial.  <u>Century 21 Real Estate LLC v. All Prof'l
21 Realty, Inc.</u>, Civ. Nos. 2:10-2751 WBS GGH, 2:10-2846 WBS GGH,
2:11-2497 WBS GGH, 2012 WL 3260452 at *10 (E.D. Cal. Aug. 8,
22 2012) (citing <u>Burch v. Regents of the Univ. of Cal.</u>, 433 F. Supp.
2d 1110, 1119-20 (E.D. Cal. 2006)).  Objections to evidence on
23 the ground that the evidence is irrelevant, speculative,
argumentative, vague and ambiguous, or constitutes an improper
24 legal conclusion are all duplicative of the summary judgment
standard itself.  <u>Id.</u>  POCC's objections are therefore overruled.

25      [2]   The court will cite to the Williams affidavit for the
purposes of this Order.
26

27      [3]   Federal Rule of Civil Procedure 56 was revised and
rearranged effective December 1, 2010.  However, as stated in the
28 Advisory Committee Notes to the 2010 Amendments to Rule 56,
"[t]he standard for granting summary judgment remains unchanged."

5

1   negates an essential element of the non-moving party's case.

2   Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

3   Alternatively, the moving party can demonstrate that the

4   non-moving party cannot produce evidence to support an essential

5   element upon which it will bear the burden of proof at trial.

6   Id.

7            Once the moving party meets its initial burden, the

8   burden shifts to the non-moving party to "designate 'specific

9   facts showing that there is a genuine issue for trial.'"  Id. at

10  324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,

11  the non-moving party must "do more than simply show that there is

12  some metaphysical doubt as to the material facts."  Matsushita

13  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

14  "The mere existence of a scintilla of evidence . . . will be

15  insufficient; there must be evidence on which the jury could

16  reasonably find for the [non-moving party]."  Anderson, 477 U.S.

17  at 252.

18           In deciding a summary judgment motion, the court must

19  view the evidence in the light most favorable to the non-moving

20  party and draw all justifiable inferences in its favor.  Id. at

21  255.  "Credibility determinations, the weighing of the evidence,

22  and the drawing of legitimate inferences from the facts are jury

23  functions, not those of a judge . . . ruling on a motion for

24  summary judgment . . . ."  Id.

25       A. POCC's Motion for Summary Judgment

26           First, POCC seeks summary judgment on Rigby's

27  counterclaim against it for breach of contract.  Second, POCC

28  moves for partial summary adjudication of the fact that Rigby

6

wrongfully prevented it from completing its performance under the contract.  Third, POCC requests partial summary adjudication on the fact that Rigby wrongfully withheld retainage on the project. Finally, it seeks partial summary adjudication on the fact that it is entitled to prejudgment interest.

### 1.  Rigby's Counterclaim for Breach of Contract

In its counterclaim, Rigby contends that POCC materially breached the contract when POCC provided failing filters.

When a contract includes a performance guarantee, "[a] contractor is required to follow the plans and specifications and when he does so, he cannot be held to guarantee that the work performed as required by this contract will . . . accomplish the purpose intended." B.R. Goodwin v. Village of Firth, 319 P.2d 970, 972-73 (Idaho 1958) (quoting Puget Sound Nat. Bank of Tacoma v. C.B. Launch Const. Co., 245 P.2d 800, 805 (Idaho 1952)). Thus, when a contractor follows all contract specifications and performs in a workmanlike manner, "the responsibility rests upon the party who fathers the plan." Id. at 972 (quoting MacKnight Flintic Stone Co. v. City of New York, 54 N.E. 661, 664 (N.Y. 1899)).

Here, the contract documents require that POCC provide a filter that is manufactured by either Aqua-Aerobic or Parkson, (Peck Aff. Ex. E ¶ 2.23(A)), and that meets specifications which include, among other things, a minimum effective submerged filtration area, (id. at ¶ 2.05).  Despite POCC's arguments to the contrary, simply providing a Parkson filter does not satisfy its obligation under the contract.

7

Rigby provides expert testimony that the filters' minimum effective submerged filtration area measured only 215.8 square feet, far less than the 520 square feet required under the contract. (Williams Aff. Ex. C at 3.)  Unlike Goodwin, in which it was undisputed that the contractor provided the correct materials for the job, here there is a dispute over whether the filters conformed to the contract specifications.

Therefore, whether POCC breached the contract by failing to provide conforming filters is a genuine issue of material fact.

2.  Prevention of Performance

Under Idaho law, "a party who is prevented from performing by the party for whom the work is to be done may treat the contract as breached and may recover damages sustained." Sullivan v. Bullock, 864 P.2d 184, 189 (Idaho Ct. App. 1993).  As explained by the Idaho courts:

> In any case where the plaintiff's performance requires the cooperation of the defendant, as in a contract to serve or to make something from the defendant's materials or on his land, the defendant, by necessary implication, promises to give this cooperation and if he fails to do so, he is immediately liable although his only express promise is to pay money at a future day.
>
> Indeed, there is generally in a contract subject to either an express or an implied condition an implied promise not to prevent or hinder performance of the condition. Such prevention, if the condition could otherwise have been performed, is, therefore, an immediate breach of contract, and if of sufficiently serious character, damages for the loss of the entire contract may be recovered.

Id. at 187-88 (citing 11 Williston on Contracts § 1316 (3d ed. 1968)).

"To excuse a party's nonperformance, however, the

8

conduct of the party preventing performance must be 'wrongful'

and 'in excess of their legal rights.'"  Id. at 188.  "[T]he

conduct of the party preventing performance must be outside what

was permitted in the contract and 'unjustified,' or outside the

reasonable contemplation of the parties when the contract was

executed."  Id.

Change Order 22 provides that, should an item

malfunction during testing, "the item shall be repaired and the

test restarted."  (Peck Aff. Ex. K.)  However, Change Order 22

does not abrogate the city engineer's right to "reject work[4]

which engineer believes to be defective,[5] or that will not

produce a completed project that conforms to the contract

documents or will prejudice the integrity of the design concept

of the completed project as a functioning whole."  (Peck Aff. Ex.

C ¶ 6.19(c).)

There is evidence that the city engineers refused

further testing because the filters caused excessive backwash,

which in turn caused the valve to malfunction.  (Williams Aff.

Ex. C.)  Thus, Rigby was arguably exercising its contractual

right to reject work that "will prejudice the integrity . . . of

the completed project as a functioning whole."  (Peck Aff. Ex. C

¶ 6.19(c).)

---

[4]    Under the Prime Contract, "work" is defined broadly to
include, in part, "[t]he entire construction or the various
separately identifiable parts thereof."  (Peck Aff. Ex. C Section
1.01(52).)  The filters therefore qualify as "work."

[5]    "The word 'defective,' when modifying the word 'Work,'
refers to Work that is unsatisfactory, faulty, or deficient in
that it: (a) does not conform to the Contract Documents . . . ."
(Peck Aff. Ex. C Section 1.02(D).)

1    Since it is not clear that rejection of filters during

2 the testing period was "outside the reasonable contemplation of

3 the parties when the contract was executed," Sullivan, 864 P.2d

4 at 188, whether Rigby prevented POCC from completing the contract

5 remains a genuine issue of material fact.

6    3. Retainage

7    POCC alleges that, even if the court does not find that

8 Rigby prevented performance as a matter of law, Rigby must pay

9 $375,710.36, which is the entirety of the contract price minus

10 five percent of the cloth filters' value, under Idaho Code

11 section 54-1926.  The contractual value of the cloth filters is

12 $380,000.  (Peck Aff. Ex. H.)

13    Idaho Code section 54-1926 requires that

14    [p]ublic bodies requiring a performance bond or payment
       bond in excess of fifty percent (50%) of the total
15     contract amount shall not be authorized to withhold from
       the contractor or subcontractor any amount exceeding five
16     percent (5%) of the total amount payable as retainage.
       Furthermore, the public body shall release to the
17     contractor any retainage for those portions of the
       project accepted by the contracting public body and the
18     contractors as complete within thirty (30) days after
       such acceptance.
19

20 Idaho Code § 54-1926(3).

21    The reasons for a retainage statute have been explained

22 by the Idaho courts:

23    In the private sector, one furnishing labor or materials
       can protect himself against nonpayment by either the
24     owner or contractor by filing a lien on the property in
       question.  However, the legislature has determined that
25     in the public sector such remedies are either unavailable
       or would be unseemly and, hence, has enacted the Public
26     Contracts Bond Act.  Such statutes provide a substitute
       for the lien remedies available in the private sector.
27     Those statutes provide that when a public body enters
       into a contract for the construction . . . of a public
28     works, it shall require the contractor to post bonds . .

10

. . In the event of nonpayment, a cause of action is authorized against said bonds.

H-K Contractors, Inc. v. City of Firth, 611 P.2d 1009, 1010 (Idaho 1979) (citations omitted).

First, Rigby's alleged withholding of $375,710.36 is just over four percent of the overall contract price of $8,784,928.08.

Second, Rigby did not accept the cloth filters. The Prime Agreement states that "[n]one of the following shall will constitute an acceptance of work: . . . [a]ny review and approval of a shop drawing or sample submittal or the issuance of a notice of acceptability by engineer." (Peck Ex. C ¶ 6.19(c).) Keller's approval of a design thus does not constitute acceptance of the equipment. Furthermore, Rigby sent a formal letter to POCC specifically rejecting the cloth filters. (Peck Aff. Ex. O.) Since Rigby never accepted the cloth filters, it was not required to release retainage for that portion of the project.

Because Rigby's withholding was less than five percent of the overall contract price and does not represent retainage for accepted work, Rigby is not required to pay POCC $375,710.36 under Idaho Code section 54-1926(3).

4.  Prejudgment Interest

Finally, POCC argues that it is entitled to prejudgment interest on any damages award it could receive. This issue is best resolved when the court can determine whether and how much POCC will recover in judgment.

Overall, genuine disputes of material facts remain as to whether POCC breached the contract and whether Rigby

11

wrongfully prevented POCC from completing its performance under the contract.  In addition, Rigby is not required to pay retainage to POCC under Idaho Code section 54-1926(3) and the court cannot decide at this time whether liquidated damages are available.  Accordingly, plaintiff's motion for summary judgment and partial summary adjudication will be denied.

B. <u>Travelers' Motion for Summary Judgment</u>

"A surety is generally not liable on his undertaking unless his principal is liable and in default."  <u>Ass'n de</u> <u>Azucareros de Guatemala v. U.S. Nat. Bank of Or., Portland Or.</u>, 423 F.2d 638, 641 (9th Cir. 1970).  Travelers and POCC executed a performance bond ("Bond") in the amount of $8,603,000.000 naming Rigby as "Owner."  (Peck Aff. Ex. F.)  Travelers is therefore entitled to POCC's defenses.  However, a genuine dispute of material fact exists as to whether POCC is liable for breach of contract when it provided nonconforming filters.  Since POCC could be held liable, Travelers could be as well.

In addition, the Bond does not bar Rigby's claims against Travelers.  The Bond provides that, "[i]f there is no Owner Default, Surety's obligation under this Bond shall arise after [lists conditions]."  (<u>Id.</u>)  "Owner Default" is defined as, in relevant part, "[f]ailure of Owner . . . to pay Contractor as required by the Contract."  (<u>Id.</u>)  Here, however, Travelers, like POCC, fails to show that Rigby breached its contractual obligations when it refused to pay POCC.  Travelers does not argue that Rigby failed to meet any of the listed conditions.  Therefore, whether Rigby's actions were an "Owner Default" under the Bond is a genuine issue of material fact.

12

1    Accordingly, Travelers motion for summary judgment will
2  be denied.
3         C.   Parkson's Motion for Summary Judgment
4         Parkson seeks partial summary judgment to enforce the
5  limitation on liability contained in the Performance Guarantee.
6  The court addressed a similar argument in Parkson's motion to
7  compel arbitration.  (Order at 7-14.)  As with the arbitration
8  clause, Parkson unilaterally placed a maximum liability clause in
9  the Performance Guarantee it was contractually obligated to give
10 to Rigby without the right to do so.[6]  As was the case with the
11 arbitration clause, Rigby never signed the Performance Guarantee
12 nor affirmatively agreed to the maximum liability clause.
13        Parkson argues that POCC accepted the maximum liability
14 clause when its engineers approved the Performance Guarantee.
15 However, the scope of the engineers' review was confined to the
16 technical specifications of a project.  (Peck Ex. C ¶ 6.19(c).)
17 Indeed, the engineer's stamp of approval clearly states "[t]his
18 check is only for review of general conformance with the design
19 concept."  (Mastin Aff. Ex. C.)  Thus, when the engineers
20 approved the Performance Guarantee, the scope of their agency was
21 limited to approval of the technical aspects of the document and
22 did not extend to acceptance of the maximum liability clause.
23        Parkson also argues that, by suing on the Performance
24 Guarantee, Rigby ratified the engineers' acceptance even if
25 acceptance was originally outside their scope of authority.
26 ─────────────────
27        [6]   In deciding this motion, as in the prior Order, the
   court makes no judgment regarding the merits of Rigby's
28 underlying breach of contract claim.  See United Computer Sys.,
   Inc. v. AT & T Corp., 298 F.3d 756, 766 (9th Cir. 2002).

Under Idaho law, "a principal cannot repudiate a contract entered into by its agents in excess of the agents' authority, and at the same time accept and retain the benefits that accrue from such act." <u>Shake v. Payette Valley Produce Exch.</u>, 245 P. 683, 684 (Idaho 1926) (holding that a cross-complaint filed by defendant on a disputed contract ratified the contract). Parkson further argues that, once ratified, Rigby may not pick and choose between applicable provisions.

By suing on a disputed contract, however, a party does not ratify terms that it never accepted. <u>See, e.g.,</u> <u>Mountain View Hosp., L.L.C. v. Sahara, Inc.,</u> Civ. No. 07-464 BLW, 2011 WL 4962183, at *30 (D. Idaho Oct. 17, 2011) (denying a motion for summary judgment where there was no meeting of the minds regarding a limitation of liability clause). Thus, even if Rigby were deemed to have ratified the Performance Guarantee by suing under it, such ratification would not extend to the maximum liability clause.[7]

For the foregoing reasons, because Rigby never agreed to or ratified the maximum liability provision in the Performance Guarantee, the court will deny Parkson's motion for partial summary judgment.

IT IS THEREFORE ORDERED that:

(1) POCC's motion for summary judgment against Rigsby be, and the same hereby is, DENIED;

---

[7] The court need not address here whether Rigby may ultimately recover on the Performance Guarantee without being bound by all of its terms. Nor need the court decide whether, because the Performance Guarantee was a preexisting duty between POCC and Parkson, Rigby may recover on it at all. Those questions are not before the court on these motions.

14

1              (2) Travelers' motion for summary judgment against

2   Rigby be, and the same hereby is, DENIED; and

3              (3) Parkson's motion for summary judgment against Rigby

4   be, and the same hereby is, DENIED.

5   DATED:   October 22, 2012

6

7                                              _____

                    WILLIAM B. SHUBB

8                    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15